IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DONALD OVERBAUGH,

                              Plaintiff,

        vs.                                     Civil Action No.
                                                6:07-CV-00261 (NAM/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

_____


APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

TAUB LAW OFFICE                 ELI I. TAUB, ESQ.
7 Camden Court
Mechanicville , NY 12118


FOR DEFENDANT:

HON. ANDREW BAXTER              SHEENA WILLIAMS-BARR, ESQ.
United States Attorney          Special Asst. U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Donald Overbaugh, who suffers from various medical conditions including osteoarthritis of the hips and obesity, commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a determination by the Commissioner of Social Security denying his application for supplemental security income ("SSI") benefits under the Social Security Act.  In support of his challenge, plaintiff maintains that the determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter that plaintiff was not disabled at any of the relevant times within the meaning of the Act, and thus not entitled to receive SSI benefits, as modified by the Social Security Administration Appeals Council ("Appeals Council") finding that plaintiff became disabled on his fiftieth birthday, is not supported by substantial evidence and resulted from the improper and unexplained rejection by the ALJ of contrary opinions of various treating sources.

Having carefully reviewed the record in the light of plaintiff's arguments, I find that the Commissioner's determination, as modified by the Appeals Council, resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in July of 1956; at the time of the administrative

hearing in this matter he was forty-nine years old.  Administrative

Transcript at pp. 50, 314-15.[1]  Plaintiff lives alone as a boarder in a private

residence located in Amsterdam, New York.  AT 51.  Overbaugh does not

work, and is currently receiving public assistance payments.  *Id.*

Plaintiff completed the eleventh grade, attending regular education

courses, but does not appear either to have graduated from high school or

to have earned a general equivalency diploma ("GED").  AT 65.  While

plaintiff has had some casual employment in the distant past, he has no

meaningful relevant past work experience for purposes of the Act.  AT 53-

57, 60, 68, 88-89.

Beginning in or about September of 2000, plaintiff began to

experience pain in his left hip.  AT 211-12, 315.   Plaintiff attributes the

pain to an incident occurring while working at a taxi company, when he

and another individual attempted to close a garage door that was jammed.

*Id.*  Plaintiff has been treated for his hip pain by several individuals,

---

[1]    Portions of the administrative transcript of evidence and proceedings
before the agency, Dkt. No. 8, which was compiled by the Commissioner and is
comprised in large part of the medical records and other evidence before the agency
when its decision was made, will be cited hereinafter as "AT ___."

including initially by Dr. Charles J. Bertuch, of Amsterdam Orthopedics,

who began seeing the plaintiff in January of 2001.[2]  AT 195-211, 231-33.

X-rays taken in November of 2001 revealed moderate osteoarthritis of

plaintiff's left hip.[3]  AT 211-12.  Noting that plaintiff was overweight, Dr.

Bertuch recommended weight loss and physical therapy.  *Id.*

Plaintiff was thereafter seen periodically by Dr. Bertuch, and efforts

were undertaken to treat plaintiff's condition through physical therapy and

corticosteroid injections.  AT 195-211, 231-33.  In a note of an office visit

from February 2, 2005, Dr. Bertuch reported frustration over his inability to

explain plaintiff's pain, given his good range of motion, and rendered a

diagnosis of "[d]egenerative arthritis left hip with just about full range of

motion, pain Mild to moderate degenerative arthritis by x-ray and adv.

degenerative Arthritis by previous CT scan", adding that he did not

understand why surgery was not performed at Ellis Hospital orthopedic

---

[2]      The record contains some discrepancy concerning the date of the garage door incident.  On November 15, 2001, plaintiff reported to Dr. Bertuch that the incident occurred in October of 2001.  AT 211.  In plaintiff's application for SSI benefits, however, he stated that the he became disabled on September 1, 2000.  AT 50.  Similarly, by contrast, the disability report completed for the agency by the defendant states that he first experienced hip pain in October of 2000.  AT 84.

[3]      In a report of his initial consultation, conducted on November 15, 2001, Dr. Bertuch also noted a diagnosis of mild to moderate osteoarthritis of plaintiff's right hip.  AT 211.

clinic, where plaintiff was also treating for his condition.  AT 231.

Plaintiff was referred by Dr. Bertuch to Dr. Lesly Germain, at Nathan Littauer Hospital, in or about March of 2005.  AT 214.  After reviewing available records and examining plaintiff, Dr. Germain diagnosed Overbaugh as suffering from osteoarthritis of the left hip, and a decision was made that plaintiff would undergo a total hip replacement.  AT 214-16.  Hip replacement surgery was subsequently performed by Dr. Germain on April 5, 2005, through use of an acetabular cup and trabecular metal dome screws.  AT 220-26.   In a report of the surgery, Dr. Germain confirmed his earlier diagnosis of severe osteoarthritis of the left hip.  AT 220.

In a report of a post-surgical follow-up visit conducted on May 25, 2005, Dr. Germain noted that Overbaugh was experiencing some pain and tightness after exercising, but that the pain was "much less", adding that "[t]he patient is progressing well."  AT 248.  During that visit Dr. Germain prescribed Ultram for pain, and advised plaintiff to return in two months for a follow-up visit.[4]  *Id.*

---

[4]      The record suggests that Dr. Germain saw plaintiff again on July 25, 2005 and October 24, 2005.  *See* AT 264.  The report of plaintiff's July 25, 2005 visit to Dr. Germain is unremarkable in its findings.  AT 242-43.  The record does not contain a report of plaintiff's October 24, 2005 visit.

Plaintiff was consultatively examined by Dr. Mannar Hannah, of Industrial Medicine Associates, P.C., on May 4, 2004, prior to his hip replacement.  AT 176-80.  Following his examination Dr. Hannah diagnosed plaintiff as suffering from left hip osteoarthritis and noted that he was scheduled for a total hip replacement in September of that year. AT 178.  Dr. Hannah listed his prognosis as guarded, and noted restrictions associated with Overbaugh's condition, including with respect to activities requiring heavy lifting, carrying, squatting and kneeling, but advised re-evaluation following the hip replacement surgery.  AT 179.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

Plaintiff filed an application for SSI benefits on April 6, 2004, alleging a disabling onset date of September 1, 2000.  AT 50-52.  Following the denial of that application, *see* AT 25, 27-30, at plaintiff's request a hearing was conducted before ALJ Joseph Gibbons on September 9, 2005 to address his claim for benefits.  *See* AT 311-37.  Plaintiff was represented by counsel during the course of that hearing.  AT 313.

        1.   The ALJ's Decision

On December 13, 2005 ALJ Gibbons issued a written decision

regarding plaintiff's claim for benefits.  AT 18-24.  After undertaking a *de novo* review of the evidence, including available medical records and plaintiff's hearing testimony, and applying the now familiar five step sequential test for determining disability, ALJ Gibbons concluded that plaintiff was not disabled at any point within the relevant time period.  AT 23-24.

In arriving at his determination, ALJ Gibbons first found that plaintiff had not engaged in substantial gainful activity since the filing of his application for SSI benefits.  AT 19.  ALJ Gibbons next concluded that plaintiff's osteoarthritis, resulting in pain and loss of motion to the left hip and groin area, sufficiently interferes with his ability to perform basic work activities as to qualify as severe for purposes of step two of the disability algorithm, but at step three concluded that the impairment does not meet or equal any of the listed, presumptively disabling conditions set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 19.  After observing that plaintiff has no relevant work experience for use in connection with step four of the disability test, AT 19, ALJ Gibbons next set about determining Overbaugh's residual functional capacity ("RFC"); after surveying the available medical records, ALJ Gibbons concluded

that, despite his medical conditions, plaintiff retains the RFC to sit for six hours and stand for two hours in an eight hour work day, and to lift ten pounds, and thus concluded that he is capable of performing a full range of sedentary work.[5]   AT 20.   Proceeding to step five, and after rejecting plaintiff's testimony of disabling pain in view of his daily activities and the lack of support in objective clinical findings, in reliance upon the medical vocational guidelines (the "grid") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, ALJ Gibbons determined that a finding of no disability was warranted.[6]   AT 22-23.   In light of his findings, ALJ Gibbons concluded that plaintiff was not disabled at any relevant time through the date of his decision.   AT 23-24.

---

[5]       Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

[6]       As will be seen, the plaintiff's status under the grid changed markedly after his fiftieth birthday, at which point a finding of disabled was directed, as the Appeals Council later noted.  *See* AT 9-12.

8

2.     The Appeals Council

Plaintiff sought review of ALJ Gibbons' determination by the Appeals Council.  *See* AT 307-10.  In support of that request plaintiff submitted additional evidence accumulated following the ALJ's decision, including reports of x-rays taken in November of 2005 reflecting lumbar degenerative disc disease at multiple levels, *see* AT 280; the results of magnetic resonance imaging ("MRI") testing of plaintiff's lumbar spine on December 12, 2005, revealing the stenotic changes at L3-L4, L4-L5, and L5-S1 levels, AT 282; and reports from Diane Vecchio, a nurse practitioner, and co-signed by Dr. Russell Cecil, an orthopedist, from March and May of 2006, reflecting an opinion that plaintiff is totally disabled and unable to return to work.  AT 269, 288-89, 297.

In a decision dated January 20, 2007, the Appeals Council considered but rejected the additional arguments raised and accepted ALJ Gibbon's RFC determination that plaintiff retains the capacity to perform a full range of sedentary work.  AT 9-12.  The Appeals Council also approved of the ALJ's resort to the grid to make a finding of not disabled, but noted that on July 11, 2007, when he attained the age of fifty, Overbaugh became a person closely approaching advanced age, for

9

purposes of the grid, and therefore found plaintiff disabled from that point

forward.  *Id.*  The Appeals Council thus concluded that plaintiff has been

disabled, as defined by the Act, since July 11, 2006, but was not prior to

that date.  AT 12.

III.    DISCUSSION

        A.    Scope of Review

        A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Burgess v. Astrue,* 537 F.3d. 117, 127 (2d Cir. 2008) (citations omitted); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 ).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644

(2d Cir. 1983).

   B.   <u>Disability Determination - The Five Step Evaluation Process</u>

   The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

   The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

13

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment, or combination of impairments, significantly restricting his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.    <u>The Evidence In This Case</u>

      Plaintiff's claims in this action center upon the agency's rejection of various treating source opinions.  Plaintiff challenges the ALJ's rejection of form reports by Dr. Bertuch to the New York State Department of Social Services, dated June 30, 2004 and September 10, 2004 – issued prior to plaintiff's replacement surgery – stating that "patient is not capable of working in any capacity at this time," *see,* AT 196-97, and questions the ALJ's decision to accept an August 24, 2005 assessment from Dr. Germain regarding his physical capabilities and to reject a more restrictive assessment provided by Dr. Germain in November of 2005.  AT 234-39, 263, 264-67.  Plaintiff further contests the Appeal Council's failure to credit new evidence, including opinions from Dr. Russell Cecil, an orthopedist and Diane Vecchio, a nurse practitioner, revealing the existence of an

allegedly incapacitating lumbar spinal condition.  AT 269.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28,

_____

[7]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.  In deciding what

weight, if any, an ALJ should accord to medical opinions, he or she may

consider a variety of factors including "[t]he duration of a patient-physician

relationship, the reasoning accompanying the opinion, the opinion's

consistency with other evidence, and the physician's specialization or lack

thereof[.]"  *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing

20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must

provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Failure to apply the appropriate legal standards for

considering a treating physician's opinions is a proper basis for reversal

and remand, as is the failure to provide reasons for rejection of his or her

opinions.  *Johnson*, 817 F.2d at 986; *Barnett*, 13 F. Supp. 2d at 316-17.

The ALJ's rejection of Dr. Bertuch's "To Whom It May Concern" note

of September 22, 2004 and survey responses suggesting plaintiff's

inability to work is easily addressed.  See AT 195.  In those entries Dr.

Bertuch offers an opinion on the ultimate issue of plaintiff's ability to work,

a matter reserved to the Commissioner, and thus is not entitled to

deference despite having been provided by a treating source.  AT 196;

*see Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp.2d at 316.  Moreover, it is

clear that both of those conclusory opinions from Dr. Bertuch address

plaintiff's condition prior to his surgery, and, in any event, are inconsistent

with statements in his office notes regarding plaintiff's limitations, which

were in fact credited and given controlling weight by ALJ Gibbons in his

decision.  *See* AT 21.  Addressing a February 2, 2005 office note from Dr.

Bertuch, wherein he expressed his inability to explain plaintiff's pain,

specifically noting that plaintiff continued to demonstrate a full range of

motion and additionally voicing his disappointment at the fact that hip

replacement surgery was not performed at Ellis Hospital as contemplated,

*see* AT 231, for example, the ALJ gave that pre-surgery assessment

controlling weight in his decision.  AT 21.

The more difficult question concerns the ALJ's rejection of the

opinions of Dr. Germain set forth in a November 2005 medical source

statement, AT 264-67, apparently contradicting a medical source

statement that he completed in August of 2005, AT 234-37, which fully

supports the ALJ's sedentary work determination.  Comparison of the two

assessments reveals that the later report is indeed more limiting.  While in August, for example, Dr. Germain opined that plaintiff is capable of lifting a maximum of twenty pounds, standing/walking for three hours in an eight-hour work day, and sitting for unlimited periods of time provided he is given the opportunity to change positions, his November 18, 2005 opinion was that plaintiff is capable of lifting less than ten pounds and can stand and/or walk for less than two hours in an eight-hour work day.  AT 235-36, 265.

In an effort to clarify this potential inconsistency, on November 22, 2005, Dr. Germain offered the following opinions regarding plaintiff's ability to work, given his surgery and subsequent recovery:

| Time Period | Opinion |
|---|---|
| 4/5/05 - 5/25/05 | No work during convalescence |
| 5/25/05 - 7/25/05 | No full time work, but capable of working approximately twenty hours per week with restrictions to avoid long periods of standing and/or walking, and with the freedom to change positions as necessary |
| 7/25/05 - six months later | Full time work, with same restrictions; should be limited "to a full time desk job permanently" |

AT 263.  ALJ Gibbons explained that he put more faith in the August,

19

2005 assessment, given the lack of objective and diagnostic support for the additional limitations attributed principally to plaintiff's heel pain.  *See* AT 21-22.   The rejection of Dr. Germain's subsequent report therefore was properly explained and is supported by substantial evidence.

It should be noted, moreover, Dr. Germain's November, 2005 assessment is not inconsistent with the finding of plaintiff's ability to perform a full range of sedentary work.  To the extent that Dr. Germain would suggest plaintiff's total inability to work for the approximately six-week period following his April 5, 2005 surgery, and to work only on a part-time basis for two months thereafter, those restrictions do not establish any inability of sufficient duration to meet the twelve-month requirements under the Act.  *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  The opinion of Dr. Germain that plaintiff should be limited to a permanent desk job, with avoidance of long periods of standing and/or walking and the freedom to change positions as necessary, is wholly consistent with the requirements of sedentary work.  *See* AT 263; *see also* 20 C.F.R. § 404.1567(a).  As the Second Circuit has noted, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours,

20

trapped like a seat-belted passenger in the center seat on a

transcontinental flight." *Halloran*, 362 F.3d 28 at 33.

Plaintiff also challenges the Commissioner's failure to credit the

opinion of a state agency medical employee, finding that plaintiff would be

unable to use left foot petals and would be limited in his use of lower

extremities for pushing and pulling.  *See* AT 183-88.  Initially, I note that it

is not at all certain that the opinion cited by plaintiff was rendered by a

physician, as opposed to a disability analyst, as the Commissioner notes

in his brief.  *See* Defendants' Brief (Dkt. No. 13) at p. 7.  Moreover, even

assuming that the determination was rendered by a physician, it is entitled

to no special deference since the person rendering the opinion was not a

treating source, and indeed does not appear even to have examined

plaintiff.   See 20 C.F.R. §§ 404.1527 (d)(2), 416.927(d)(2); AT 188 (RFC

assessment signed by a "medical consultant").  Perhaps most

fundamentally, plaintiff mistakenly asserts that the state agency

assessment is inconsistent with the ALJ's finding that plaintiff can perform

sedentary work; a job requiring sitting most of the time, but with some

pushing and pulling of leg or foot controls, is considered light work, not

sedentary.  *See* Program Policy Statement, 1983-1991 Soc. Sec. Rep.

(CCH) (1983).

Lastly, plaintiff complains that the Appeals Council failed to accord controlling weight to opinions offered in a May 10, 2006 memorandum co-signed by Dr. Russell Cecil and Nurse Practitioner Diane Vecchio.  *See* AT 269.  In that memorandum the authors tersely note having received some information from plaintiff regarding nerve conduction studies conducted by Dr. Minhas, though none related to plaintiff's lower extremities, and state their opinion that based upon recent findings plaintiff "is fully disabled."  *Id.*  Once again, however, that opinion is not entitled to any special consideration since it pertains to a matter reserved to the Commissioner.  *Veino*, 312 F.3d at 588.  Moreover, it should be noted that the Appeals Council did not overlook the Vecchio/Cecil memorandum, or the studies upon which is was purportedly based, which were, in fact, referenced it in its decision.  *See* AT 10.  The Appeals Council noted, however, that in an earlier report of a December 6, 2005 office visit Nurse Practitioner Vecchio noted some limitation in truncal motion, but pointed out that plaintiff had "'full strength', deep tendon reflexes were present bilaterally, . . . and straight leg raising was negative."  AT10; *see id.* 280-81.  The Appeals Council thus concluded,

and the record supports, that despite his limitations plaintiff is capable of meeting the minimal exertional demands of sedentary work.  AT 11.

IV.   SUMMARY AND RECOMMENDATION

Medical evidence in the record, particularly that related to the period following plaintiff's left total hip replacement surgery, fully supports the ALJ's finding that despite his physical condition, Overbaugh retains the capacity to meet the exertional requirements of a full range of sedentary work.  And, since that finding, when applied to the grid, directs a conclusion that plaintiff was not disabled at the relevant times prior to the ALJ's determination, although he is and has been disabled since July 11, 2006, when he attained the age of fifty, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability prior to July 11, 2006 and the finding of disability thereafter be AFFIRMED, and plaintiff's complaint in this action be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1);  FED. R. CIV. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:     August 7, 2009
           Syracuse, NY