**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONALD OVERBAUGH,**

                                        **Plaintiff,**

        **vs.**                                        **6:07-CV-0261**
                                                       **(NAM/DEP)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

Taub Law Office                               Eli I. Taub, Esq.
7 Camden Court
Mechanicville, New York 12118
_Attorneys for Plaintiff_

Richard Hartunian                             Sheena V. Williams-Barr, Esq.
United States Attorney                        Special Asst. U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorneys for Defendants_

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

        Plaintiff Donald Overbaugh brings the above-captioned action pursuant to 42 U.S.C. §

405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's

decision to deny his application for disability benefits.  This matter was referred to United States

Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28 U.S.C.

§636(b)(1)(B) and Local Rule 72.3(d).   Magistrate Judge Peebles recommended that this Court

enter judgment on the pleadings affirming the Commissioner's decision denying disability and

dismissing plaintiff's complaint.  Presently before the Court is plaintiff's objection to the Report

and Recommendation.[1]

## II.   BACKGROUND

On April 6, 2004, plaintiff filed an application for Supplemental Security Income ("SSI").

(T. 50-52)[2].  Plaintiff was 47 years old at the time of his application and alleged an inability to

work due to obesity, hip pain and chest pain. (T. 59).  On June 21, 2004, plaintiff's application

was denied and plaintiff requested a hearing by an ALJ which was held on September 9, 2005.

(T. 18, 27).  On December 13, 2005, the ALJ issued a decision and found at step one that plaintiff

had not engaged in substantial gainful activity since his application for SSI.  (T. 18-24).  At step

two, the ALJ determined that plaintiff's degenerative arthritis of the left hip was a severe

impairment.  (T. 19, 23).  At step three, the ALJ concluded that plaintiff's impairment neither met

nor equaled any impairment listed in Appendix 1 of the Regulations. (T. 19, 23).  The ALJ next

found that plaintiff retained the residual functional capacity to sit for six hours and stand for two

hours each in an eight-hour workday and lift 10 pounds.  (T. 20).  Therefore, the ALJ found that

plaintiff had the residual functional capacity to perform a full range of sedentary work activity.

(T. 20).  The plaintiff lacked any relevant past work experience.  (T. 23).  Therefore, relying on

---

[1]  Defendant has not submitted a response to Plaintiff's Objections.

[2]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 9.

the medical-vocational guidelines ("the grids") set forth in the Social Security Regulations, 20

C.F.R. Pt. 404, Subpt. P, App.2, the ALJ found that based upon plaintiff's ability to perform a full

range of sedentary work activity and given plaintiff's age and education, plaintiff was not

disabled.  (T. 23).  The ALJ denied plaintiff's application for SSI benefits. (T. 23).  The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner.[3] (T. 9-12).  This action followed.

**III.    REPORT AND RECOMMENDATION**

      In the Report and Recommendation, Magistrate Judge Peebles found that: (1) the ALJ

afforded the appropriate weight to the opinions of plaintiff's treating physician, Dr. Charles

Bertuch; (2) the ALJ's decision to reject Dr. Lesly Germain's November 2005 Medical Source

Statement was properly explained and supported by substantial evidence; (3) Dr. Germain's

opinions are wholly consistent with the requirements of sedentary work; and (4) the Appeals

Council afforded the proper weight to the opinions offered by Dr. Russell Cecil and Nurse

Practitioner Diane Vecchio.[4]  (Dkt. No. 15).

**IV.    DISCUSSION**

**A.    Standard of Review**

      In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does

not determine *de novo* whether plaintiff is disabled.  Rather, the Court must examine the

Administrative Transcript to ascertain whether the correct legal standards were applied, and

---

[3] The Appeals Council noted that on July 11, 2006, plaintiff attained the age of fifty and became a person closely approaching advanced age, and based on an exertional capacity for sedentary work, a finding of disabled beginning on July 11, 2006 was appropriate.  (T. 11-12).

[4] The Magistrate Judge also found that the ALJ afforded the proper weight to the medical opinion of the state agency medical employee.  Plaintiff did not raise an objection to that portion of the Report and Recommendation.

whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters.  *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff objects to the Magistrate's Report and Recommendation on the following grounds:  (1) the Magistrate Judge erroneously engaged in post hoc rationalizations of the Commissioner's decision not to afford controlling weight to Dr. Bertuch's opinions;  (2) the Magistrate Judge erroneously failed to find that reversal was required due to the ALJ's failure to articulate good cause for discrediting Dr. Germain's opinions; (3) the Magistrate Judge's conclusion that sedentary work allows a claimant to alternate between sitting and standing "at will" is inconsistent with Social Security Ruling 96-9p; and (4) the Magistrate Judge failed to find that reversal was required due to the Appeals Council's lack of explanation as to why it declined to credit the opinions of Dr. Cecil and Nurse Practitioner Vecchio.  (Dkt. No. 16).

**B.    Treating Physician Rule**

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. §

4

404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").  When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence.  *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

In rejecting a claim of disability, an ALJ is not required to reconcile explicitly every conflicting shred of medical testimony. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).  Failure to specifically state the weight afforded to a treating physician's opinion does not mean that the opinion was not properly considered. *See Marine v. Barnhart*, 2003 WL 22434094, at *3

(S.D.N.Y. 2003) (holding that the ALJ's failure to comment on weight afforded to opinions was not improper as the decision indicates that his findings were made "[a]fter consideration of the entire record.").  When consideration of a report would not change the outcome of the decision, the ALJ's failure to specifically state the weight afforded to an opinion is harmless error.  *Jones v. Barnhart*, 2003 WL 941722, at *10 (S.D.N.Y. 2003); *see also Walzer v. Chater*, 1995 WL 791963, at *9 (S.D.N.Y. 1995).

### 1.      Dr. Bertuch

In November 2001, plaintiff began treating with Charles Bertuch, M.D., an orthopedist, for pain in his left hip.  (T. 211).  Based upon an examination and x-rays, Dr. Bertuch diagnosed plaintiff with mild osteoarthritis of the left hip and mild to moderate osteoarthritis in the right hip. Dr. Bertuch noted that, "he does not have as much arthritis [sic] that I would have expected with this amount of his symptoms, amount of motion loss and pain".  (T. 211).  Dr. Bertuch recommended weight loss and physical therapy but noted that plaintiff was not a candidate for a hip replacement at that time. (T. 212).  Plaintiff continued to treat with Dr. Bertuch from January 2002 until August 2002.  (T. 141-145).  Dr. Bertuch consistently noted that plaintiff had more pain and loss of motion than he would expect from the amount of arthritis shown on x-rays. (T. 143-145).  Dr. Bertuch noted that pain was subjective but the loss of motion was an objective finding.  (T. 144).  In June 2002, plaintiff complained of pain with loss of motion and claimed he tried to work but, "could not do anything". (T. 142).  In August 2002, Dr. Bertuch noted that plaintiff was, "ready for a total hip replacement". (T. 141).

In February 2004, plaintiff returned to Dr. Bertuch and claimed that he cancelled surgery several years ago due to a heart condition.  (T. 140).  Dr. Bertuch noted that plaintiff had marked

pain and marked loss of range of motion of the left hip and pain in his left groin. (T. 140).  Dr.
Bertuch prescribed Aleve and advised plaintiff to use a cane and consider scheduling surgery for
a total hip replacement. (T. 140).  In May 2004, plaintiff returned to Dr. Bertuch with marked
pain on range of motion of the left hip. (T. 233).  Dr. Bertuch again noted, "I cannot explain the
marked pain and marked loss of range of motion for the amount of arthritis since there is still
quite a bit of joint space remaining". (T. 233).  Dr. Bertuch recommended cortisone injections,
"rather than jump into total hip replacement".  (T. 233).  On June 23, 2004, plaintiff returned to
Dr. Bertuch complaining of left hip pain and pain in his groin when urinating. (T. 232).  Dr.
Bertuch noted, "amazingly he has full range of motion of left hip". (T. 232).

On September 22, 2004, Dr. Bertuch prepared a letter addressed "To Whom it May
Concern". (T. 195).  Dr. Bertuch stated:

> I have been treating Mr. Overbaugh since November 2001 for arthritis
> of his left hip.  He has been unable to work; he has continued pain in
> his left hip.  He has been referred to the Orthopedic Clinic at Ellis
> Hospital for further treatment and evaluation.   I feel that it is
> reasonable that he is not able to work during this period of time. (T.
> 195).

On February 2, 2005, plaintiff had his last visit with Dr. Bertuch and complained of pain
in his lower back radiating to his left leg. (T. 231).  Dr. Bertuch noted, "I feel this is all too
complicated []situation since he has arthritis of the hip with good motion of his hip".  Dr. Bertuch
noted that the problem was not only orthopedic but also due to plaintiff's large size and suggested
that plaintiff may need neurosurgical care.  Dr. Bertuch referred plaintiff to the Orthopedic Clinic
at Albany Hospital concluding that:

> I have absolutely no idea why he has so much pain in his hip when he
> has  good motion and CT scan at [St. Mary's Hospital] on 4/5/02
> showed severe degenerative arthritis of left hip.  I do not understand

why if he did have this amount of arthritis why they did not operate at
Ellis Hospital.  Apparently, his symptoms do not go along with the
amount of arthritis he has or there is some other problem. (T. 231).

Plaintiff claims that Dr. Bertuch issued multiple opinions during the course of treating

plaintiff and that the ALJ failed to articulate the reasons for not accepting those opinions.[5]  In the

decision, the ALJ referred to Dr. Bertuch's treatment and opinions.  At step two of the sequential

analysis, the ALJ stated:

> Upon examination in February 2004, the claimant had pain and loss
> of motion of the left hip and groin.  Charles Bertuch, Jr., M.D., a
> treating orthopedist, reported that the claimant had canceled surgery
> several years previous and had never rescheduled.   Cortisone
> injections and possible hip replacement surgery was advised.  The
> claimant underwent cortisone injection treatment, but reported
> recurrent hip pain.  Dr. Bertuch opined that the claimant was disabled
> and noted that the claimant was schedule for surgery in the future". (T.
> 19).

The ALJ did not assign weight to that opinion.  The ALJ also discussed plaintiff's

February 2005 visit with Dr. Bertuch and concluded:

> Dr. Bertuch's assessment appears to be well supported [by] objective
> clinical and diagnostic laboratory findings and consistent with all the
> evidence in the medical record.  I have therefore given his opinion
> controlling weight in assessing the claimant's residual functional
> capacity. (T. 21).

The Magistrate Judge found that the ALJ's rejection of Dr. Bertuch's September 2004 "To

Whom it May Concern" note was proper as it involved a matter reserved to the Commissioner.

(Dkt. No. 15, p. 18).  The Magistrate Judge further found that Dr. Bertuch's September 2004

opinion was inconsistent with the doctor's office notes. (Dkt. No. 15, p. 18).

Based upon review of the record, the Court finds that substantial evidence supports the

---

[5] Plaintiff makes a general argument but does not specify which opinions should have been afforded more weight.

ALJ's approach to Dr. Bertuch's opinions.  Dr. Bertuch's treatment notes, records and clinical data provide no medical support for the September 2004 assessment.  Prior to issuing the September 2004 opinion, Dr. Bertuch treated plaintiff nine times.  During plaintiff's January 2002 visit, Dr. Bertuch noted that plaintiff could not work.  However, in every subsequent report,  Dr. Bertuch offered no opinion on plaintiff's ability to work.  Indeed, in April 2002, Dr. Bertuch noted that plaintiff was applying to VESID and that he would, "be better off if he got retrained in some other type of gainful employment, that can alternate between standing and sitting and doing any lifting, walking or climbing". (T. 143).   Moreover, Dr. Bertuch continually documented his inability to reconcile plaintiff's subjective complaints of pain and symptoms with objective findings and clinical data.

The ALJ summarized and analyzed the entire medical record including the reports and records of all treating, examining, and reviewing medical sources, including Dr. Bertuch's September 2004 opinion.  The ALJ did not specifically state the weight afforded to Dr. Bertuch's September 2004 opinion, however, he summarized the opinion in the decision and thus, it was clearly considered.  While the ALJ could have provided an explanation for the weight given to Dr. Bertuch's September 2004 opinion, given the lack of evidence supporting the opinion, the ALJ's failure to specifically state the weight afforded to the September 2004 opinion was harmless error.

Plaintiff also contends that the Magistrate Judge erroneously engaged in a detailed factual analysis of the medical evidence rather than a discussion of the ALJ's actual decision. (Dkt. No. 16, p. 1).  Although an agency decision must be sustained, if at all, on its own reasoning, this principle does not mechanically compel reversal when a mistake was made that clearly had no

bearing on the procedure used or the substance of the decision reached.  *Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) (citations omitted).  The Court has reviewed the record and finds that substantial evidence supports the ALJ's application of the treating physician rule.  Therefore, we need not address plaintiff's claim that the Magistrate Judge used post hoc rationalizations to uphold the ALJ's decision. *Poe v. Comm'r of Soc. Sec.* 2009 WL 2514058, at *9 (6th Cir. 2009) (citations omitted).

## 2. Dr. Germain

Plaintiff alleges that the Magistrate Judge erroneously found that the Commissioner's decision to discredit Dr. Germain's November 2005 opinion was supported by substantial evidence. (Dkt. No. 16, p. 3).

In March 2005, Dr. Bertuch referred plaintiff to Dr. Lesley Germain for complaints of left hip and groin pain. (T. 214).  Dr. Germain diagnosed plaintiff with osteoarthritis of the left hip and prescribed Darvocet.[6]  At Dr. Germain's recommendation, plaintiff agreed to undergo a total hip replacement. (T. 215).  On April 5, 2005, plaintiff had surgery.  From April 2005 until July 2005, plaintiff had four follow-up visits with Dr. Germain. (T. 220-238).  During plaintiff's last recorded examination in July 2005, Dr. Germain noted that plaintiff complained of right heel pain and a "questionable pulled Achilles' tendon". (T. 242).  Dr. Germain noted that plaintiff walked without support and had resumed his daily activities.  Upon examination, Dr. Germain found no leg discrepancies clinically, no instability in plaintiff's joints, no pain or swelling in plaintiff's leg and noted that plaintiff exhibited normal muscle strength. (T. 242).  Dr. Germain stated that plaintiff did not limp and could stand on the affected hip.  Although plaintiff exhibited an

---

[6] Darvocet is a mild narcotic analgesics prescribed for the relief of mild to moderate pain, with or without fever. *Dorland's Illustrated Medical Dictionary*, 479 (31st ed. 2007).

incomplete range of motion, mobilization was not painful and atrophy was absent. (T. 243).  Dr. Germain reviewed x-rays and found alignment preserved, no swelling and good positioning of the prosthesis. (T. 243).  Dr. Germain did not prescribe a specific course of treatment and made no assessment or diagnosis of plaintiff's condition at that visit. (T. 243).

On July 26, 2005, a Vocational Rehabilitation Counselor Assistant from The State Education Department requested an assessment of plaintiff's disability. (T. 241).  Dr. Germain stated that plaintiff's functional limitations were "no jumping - no running". (T. 241).  Dr. Germain opined that plaintiff could work full time. (T. 241).

On August 24, 2005, Dr. Germain completed a Medical Source Statement.  The statement was based upon plaintiff's last office visit on July 25, 2005. (T. 234).  Dr. Germain opined that plaintiff could lift and carry 20 pounds occasionally and less than 10 pounds frequently but noted that lifting should be kept "moderate in order to not put excess stress on hips". (T. 235).  Dr. Germain concluded that plaintiff could stand and walk for about 3 hours in an 8 hour workday and that he had no limitations in his ability to sit. (T. 235).  Dr. Germain also noted that plaintiff must periodically alternate sitting, standing or walking to relieve discomfort as follows: plaintiff could sit for 60 minutes and stand for 10 minutes before changing positions and that he must walk around every 60 minutes for 5-10 minutes. (T. 235).  Dr. Germain stated that plaintiff did not need the opportunity to shift "at will" from sitting and standing/walking provided that he could alternate sitting and standing as previously noted.  (T. 235).  Dr. Germain also opined that plaintiff could occasionally stoop and climb stairs but could never crouch or climb ladders. (T. 236).

On November 18, 2005, Dr. Germain completed a second Medical Source Statement and

diagnosed plaintiff with left hip osteoarthritis and bilateral Achilles tendinitis.  (T. 264).  Dr. Germain stated that the diagnoses were based upon an examination of plaintiff on October 24, 2005.[7] (T. 264).  Dr. Germain claimed that during the October 2005 examination, plaintiff exhibited tenderness over the Achilles tendon bilaterally with decreased range of motion and swelling. (T. 264).  Dr. Germain altered the prior opinion and concluded that plaintiff could lift and carry less than 10 pounds occasionally and less than 10 pounds frequently, plaintiff could stand and walk for less than 2 hours in an 8 hour workday with no limitations in his ability to sit, and plaintiff could sit for 45 to 60 minutes and stand for 5 minutes before changing positions.  (T. 265).  Dr. Germain opined that plaintiff "cannot walk and carry anything for 1/3 of the day" noting that plaintiff used a cane for support and stated that plaintiff could never stoop, crouch or climb ladders. (T. 266).

On November 22, 2005, Dr. Germain prepared a letter addressed "To Whom It May Concern". (T. 263).  Dr. Germain opined that from July 25, 2005 for a period of six months, plaintiff was able to work full time with "the freedom to change positions as necessary". (T. 263).  Dr. Germain opined that plaintiff should be employed at a desk job.  (T. 263).

The ALJ analyzed Dr. Germain's Medical Source Statements and concluded:

> I find Dr. Germain's August 24, 2005 opinion to be well supported by the objective clinical and diagnostic findings and consistent with all the evidence in the medical record.  In accordance with 20 CFR 404.1527, I find that her opinion of August 24, 2005, is entitled to controlling weight.  However, her follow-up assessment is not supported by any positive diagnostic findings, documented objective clinical findings, or any additional prescribed treatment for heel pain.  I find that Dr. Germain's assessment in November 2005 of increased limitations is not consistent or supported by the record and is given little weight. (T. 22).

_____

[7] The record contains no office notes, reports or records for that visit.

12

The Magistrate Judge noted that, "ALJ Gibbons explained that he put more faith in the August 2005 assessment, given the lack of objective and diagnostic support for the additional limitations attributed principally to plaintiff's heel pain".  (Dkt. No. 15, p. 19-20).  The Magistrate Judge concluded that the ALJ's decision to reject the November 2005 report was supported by substantial evidence. (Dkt. No. 15, p. 20).

Upon review of the record, the Court finds that the ALJ's decision to reject Dr. Germain's November 2005 Medical Source Statement is supported by substantial evidence.  The November 2005 assessment is not supported by any treatment notes, objective testing or clinical data. Further, it is arguably unsupported by a recent physical examination as the record is devoid of any treatment records after July 2005.  Dr. Germain noted that plaintiff was examined on October 24, 2005, however there is no record of that visit.  Dr. Germain noted that plaintiff exhibited, "tenderness over the Achilles tendon bilaterally with decreased range of motion and swelling", but fails to provide any other details with regard to the examination.  Nowhere in the August 2005 Medical Source Statement did Dr. Germain make any observations or opinions with regard to plaintiff's Achilles tendon.  Indeed, during plaintiff's examination on July 25, 2005, Dr. Germain made no clinical or objective findings with regard to plaintiff's complaints of Achilles tendon pain and noted that plaintiff had no pain or swelling in his leg, "no leg discrepancy clinically", no joint instability and normal muscle strength. (T. 242-243).  Moreover, the August 24, 2005 Medical Source Statement, which was prepared one month after that visit, does not refer to any Achilles tendon pain and provides no diagnosis other than left hip osteoarthritis.  (T. 234).  The limitations and opinions expressed by Dr. Germain in the November 2005 Statement are not supported by Dr. Germain's treatment notes or substantial evidence in the record.  Moreover, Dr.

Germain's conclusions regarding plaintiff's abilities/functioning are far more limiting and vastly different from the opinions expressed in the August 2005 Statement.  Therefore, although the Court is aware that deference should be accorded to Dr. Germain's most recent opinion pursuant to the treating physician rule, the ALJ articulated "good reasons" exist for failing to afford the opinion such weight.  *See McArthur v. Comm'r of Soc. Sec*., 2008 WL 4866049, at *15 (N.D.N.Y. 2008).

On March 3, 2004, plaintiff sought treatment with Juanita So, M.D. at St. Mary's Medical Clinic after being diagnosed with cholecystitis.[8] (T. 252).  Dr. So examined and treated plaintiff on March 24, 2004, April 22, 2004, July 22, 2004, August 31, 2004, March 31, 2005 and August 25, 2005. (T. 252-259).  During the August 2005 examination, Dr. So noted that plaintiff  had no foot problem and despite some stiffness, plaintiff had, "no more pain in the left hip".[9] (T. 259).  Dr. So's records are devoid of any reference or indication that plaintiff complained of pain in his Achilles heel.

Based upon the record, the Court finds that the November 2005 Medical Source Statement is not supported by the medical evidence.  Accordingly, the Court finds that the ALJ afforded the proper weight to Dr. Germain's opinions.

C.     **Plaintiff's RFC**

Plaintiff argues that even if Dr. Germain's November 2005 assessment was properly discredited, substantial evidence does not support the ALJ's finding that plaintiff was capable of performing the full range of sedentary work.  Plaintiff alleges that many of Dr. Germain's

---

[8] Cholecystitis is an inflammation of the gallbladder.  *Dorland's* at 355.

[9] The record contains a written notation from Dr. So dated October 24, 2005, but the doctor's handwriting is illegible. (T. 260).

limitations were inconsistent with the full range of sedentary work and would have required vocational expert testimony to determine the extent of erosion.  (Dkt. No. 16, p. 4).

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

In this matter, the ALJ found plaintiff capable of performing a full range of sedentary work.  Sedentary work is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

Based upon plaintiff's objections, SSR 96-9p is instructive in this matter:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled

15

> breaks and a lunch period, the occupational base for a full range of
> unskilled sedentary work will be eroded. The extent of the erosion will
> depend on the facts in the case record, such as the frequency of the
> need to alternate sitting and standing and the length of time needed to
> stand. The RFC assessment must be specific as to the frequency of the
> individual's need to alternate sitting and standing. It may be especially
> useful in these situations to consult a vocational resource in order to
> determine whether the individual is able to make an adjustment to
> other work.

Social Security Ruling 96-9p, 1996 WL 374185, *7 (S.S.A.)

When the record indicates that a plaintiff has significant limitations with regard to his ability to sit for extended periods of time, the ALJ should engage in a detailed discussion concerning plaintiff's restrictions. *See Weiss v. Astrue*, 2009 WL 2843249, at *4 (N.D.N.Y. 2009). Even when the ALJ concurs with the treating physician and record as a whole, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing". *Barkley v. Comm'r of Soc. Sec.*, 2008 WL 2949386, at *12 (N.D.N.Y. 2008) (citing SSR 96-9p). A plaintiff's need to alternate between sitting and standing may erode the occupational base. *Iannopollo v. Barnhart*, 280 F.Supp.2d 41, 50 (W.D.N.Y. 2003).

The ALJ found that plaintiff retained the residual functional capacity to sit for six hours and stand for two hours each in an eight-hour workday and lift 10 pounds. (T. 20). The ALJ relied upon the grids and found that plaintiff had the residual functional capacity to perform a full range of sedentary work activity.[10] (T. 20).

Based upon the record, even with "little weight" properly assigned to Dr. Germain's November 2005 assessment, the Court finds that the ALJ's RFC assessment is not supported by

---

[10] The Magistrate Judge found that, "Dr. Germain's November 2005 assessment is not inconsistent with the finding of plaintiff's ability to perform a full range of sedentary work". (Dkt. No. 15, p. 20). The Magistrate Judge also noted that, "Dr. Germain's opinion that plaintiff should avoid long periods of standing and/or walking and should have the freedom to change positions as necessary is wholly consistent with the requirements of sedentary work". (Dkt. No. 15, p. 20).

substantial evidence.  The ALJ assigned controlling weight to Dr. Germain's August 2005

Medical Assessment but erroneously selected only portions of the assessment to arrive at the

conclusion that plaintiff could perform a full range of sedentary work.  While Dr. Germain opined

that plaintiff could stand/walk for 3 hours during an 8-hour workday and had no limitations in his

ability to sit, Dr. Germain also set forth other limitations qualifying plaintiff's functional abilities.

To wit - Dr. Germain opined that plaintiff could never crouch or climb stairs and explicitly

outlined plaintiff's need to alternate between sitting and standing.  (T. 235-236).  Dr. Germain

also stated that "crawling, balancing and stairs" should be avoided. (T. 236).   The ALJ omitted

these restrictions from the RFC assessment.  The record is devoid of any other assessment of

plaintiff's functional capacities by plaintiff's treating or examining physicians.  Moreover, the

ALJ declined to assign significant weight to the Physical RFC assessment performed by the non-

examining state agency employee.  Because the ALJ offered no explanation for failing to include

the limitations into plaintiff's RFC, the Court is unable to determine how the ALJ arrived at

plaintiff's RFC.  The ALJ's failure to explain why he disregarded portions of Dr. Germain's

assessment, while simultaneously assigning it controlling weight, constitutes legal error.[11]  *See*

*Iannopollo*, 280 F.Supp.2d at 50.

Moreover, the ALJ erred when he failed to specify the frequency of plaintiff's need to

alternate sitting and standing.  Even though the treating physician set forth restrictions regarding

plaintiff's need to alternate between sitting and standing, SSR 96-9p and caselaw clearly dictate

that the ALJ had a duty to specify the extent of the limitation.  While a finding that a plaintiff has

an alternate sit/stand requirement does indicate that the occupational base for a full range of

---

[11] The ALJ omitted the restrictions for crouching, climbing stairs, crawling, balancing and plaintiff's need
to alternate between sitting and standing.

sedentary work is eroded, *White v. Comm'r of Soc. Sec.*, 2008 WL 820177, at \*12 (N.D.N.Y. 2008), the ALJ must specify the frequency of the requirement before making that determination. Without this assessment, the Court is unable to analyze the limitations on plaintiff's work schedule.        As the ALJ failed to properly assess the RFC, the findings made at the fifth step of the sequential analysis are affected.  At step five, the ALJ relied solely upon the Grids to determine that plaintiff was not disabled.  However, upon remand, it may be appropriate to employ the services of a vocational expert.  *See Dailey v. Barnhart*, 277 F.Supp.2d 226, 238 (W.D.N.Y. 2003).  If the ALJ relied upon Dr. Germain's August 2005 assessment, it appears that plaintiff would have been capable of performing something less than the full range of sedentary work.  *See Barkley*, 2008 WL 2949386, at \*12.  Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision."  *Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y. 1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

**D.      Appeals Council Review of Additional Evidence**

Plaintiff claims that the Magistrate Judge erred when he failed to find that remand was necessary due to the Appeals Council's failure to credit the opinions of plaintiff's treating physician, Dr. Russell Cecil, and family nurse practitioner, Diane Vecchio. (Dkt. No. 16, p. 6).

Social Security Regulations require the Appeals Council to consider additional evidence if it is new, material and related to the period on or before the date of the ALJ's hearing decision. *Bosmond v. Apfel*, 1998 WL 851508, at \*11-13 (S.D.N.Y. 1998) (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996)).  The Court must consider whether: (1) the additional evidence is new,

rather than merely cumulative; (2) the evidence is material, that is, relevant to the time period for which benefits were denied, probative, and reasonably likely to have altered the administrative decision if known at the time; and (3) good cause exists for the failure to present the evidence earlier. *Id*. (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988)).

To be material, the evidence must create a reasonable possibility that the Commissioner's previous determination would be influenced by the information. *See Gonzalez ex rel. Gonzalez v. Barnhart*, 2004 WL 1460634, at *5 (S.D.N.Y. 2004). The Court must distinguish between new evidence that reflects on the severity of the plaintiff's impairment as it existed during the time for which benefits were denied and new evidence which represents new impairments which would not have affected the decision below. *Bosmond*, 1998 WL 851508, at *11-13 (the plaintiff's additional evidence pertained to new problems including spinal stenosis and arthritis while the record before the ALJ involved the plaintiff's carpal tunnel syndrome) (citing *Hernandez v. Sullivan*, 1992 WL 315637, at *3 (S.D.N.Y. 1992)). The ALJ's decision will stand when a post-determination diagnosis does no more than indicate the more recent onset of disability. *Id*. (holding that the new evidence did not indicate that the plaintiff was disabled at the prior relevant periods by her more recently diagnosed problems). "A diagnosis that post-dates an administrative hearing may be considered new evidence relating to the relevant time period only if it reveals that a claimant 'had an impairment substantially more severe than was previously diagnosed.' " *Florek v. Comm'r of Soc. Sec*., 2009 WL 3486643, at *11 (N.D.N.Y. 2009) (citing *Xu v. Barnhart*, 2006 WL 559263, at *7 (E.D.N.Y. 2006)).

After the ALJ issued his decision on December 13, 2005, plaintiff submitted additional medical evidence including office records and opinions from Family Nurse Practitioner ("FNP")

Diane Vecchio and Russell Cecil, M.D. (T. 269-298).  On December 6, 2005, plaintiff had an initial consultation with FNP Vecchio at Mohawk Valley Orthopedics. (T. 280).  Plaintiff complained of low back pain as a result of a fall at his home in November 2005.  (T. 280).  Upon examination, FNP Vecchio noted that plaintiff was obese with "all pain in the lower lumbar spine". (T. 280).  FNP Vecchio found that plaintiff's straight leg raising was negative, plaintiff exhibited full strength in his spine and heel/toe walk was normal given plaintiff's size.  FNP Vecchio specifically noted that plaintiff did not complain of hip pain.  (T. 280).  FNP Vecchio noted that x-rays of the lumbar spine revealed degenerative changes only and diagnosed plaintiff with lumbar degenerative disc disease at multiple levels. (T. 280).   On December 28, 2005, plaintiff underwent an MRI of his lumbar spine which revealed a narrowing of the spinal canal at L3-L4 and L4-L5 to a mildly prominent degree and mild narrowing at L5-S1. (T. 284).  Plaintiff had two follow up visits with FNP Vecchio in January 2006 and February 2006.[12]  During those visits, plaintiff complained of low back pain and ankle pain. (T. 285-288).  FNP Vecchio noted that plaintiff's, "Achilles' moved freely" with tenderness. (T. 285).  An x-ray of plaintiff's left ankle revealed that plaintiff suffered from a Haglund deformity at the Achilles' level.[13]  (T. 285).

In February 2006 and March 2006, FNP Vecchio issued "Disability Certificates" and opined that plaintiff was unable to return to work.[14] (T. 297-298).  On April 5, 2006, FNP Vecchio prepared a letter addressed "To Whom it May Concern". (T. 278).  FNP Vecchio noted that plaintiff began treating for low back pain but that he recently developed the Haglund

_____

[12] Plaintiff appeared for an examination on March 20, 2006 but the visit was abbreviated because plaintiff suffered from the flu. (T. 290).

[13] A Haglund deformity is bursitis in the region of the Achilles tendon.  *Dorland's* at 541.

[14] FNP Vecchio provided no diagnosis or explanation for plaintiff's inability to work.

deformity for which he was being treated by another physician. (T. 278).  FNP Vecchio discussed seeking a consult for plaintiff's Achilles tendinopathy and neurological issues. (T. 278).  FNP Vecchio also referred to plaintiff's obesity and dyspnea.[15] (T. 278).  On May 10, 2006, Dr. Cecil opined that plaintiff was fully disabled based upon nerve conduction studies of his upper extremities which revealed sensory neuropathy, cervical radiculopathy, chronic pain syndrome and bilateral carpal tunnel syndrome. (T. 269).  Dr. Cecil also noted that plaintiff received physical therapy for his back, Achilles' heel and gait and that he was discharged because his physical therapists believed that there were no interventions that would be of benefit to plaintiff. (T. 269).   On November 28, 2006, FNP Vecchio prepared a second letter addressed "To Whom it May Concern". (T. 305).   FNP wrote the letter, "to seek an appeal for Mr. Overbaugh". (T. 305). FNP Vecchio noted that plaintiff suffered from spinal stenosis, a bone spur and Achilles' heel tendinitis, sensory and peripheral neuropathy, bilateral carpal tunnel syndrome and chronic pain syndrome. (T. 305).

On January 20, 2007, the Appeals Council issued a decision and concurred with the ALJ's finding that the claimant was not disabled. (T. 10).   In the decision, the Appeals Council acknowledged receipt of a FNP Vecchio's November 28, 2006 letter and plaintiff's medical records from Mohawk Valley Orthopedics.  The Appeals Council considered the additional medical evidence but found: "neither [the arguments from plaintiff's representative] nor the new medical evidence received after the date of the decision shows that the claimant is incapable of performing the minimal exertional demand of sedentary work since April 2004". (T. 10).  The Appeals Council noted FNP Vecchio's December 6, 2005 examination of plaintiff and her

---

[15] Dyspnea is shortness of breath.  *Dorland's* at 589.

conclusion that plaintiff had "full strength, deep tendon reflexes and pulses were present bilaterally and straight leg raising was negative" was consistent with prior reports from plaintiff's other treating physicians.

The Magistrate Judge found that the Appeals Council assigned the appropriate weight to the opinions of FNP Vecchio and Dr. Cecil because, "[o]nce again, [] that opinion is not entitled to any special consideration since it pertains to a matter reserved to the Commissioner". (Dkt. No. 15, p. 22).  The Magistrate Judge also found that the Appeals Council, "did not overlook the Vecchio/Cecil memorandum, or the studies upon which it was purportedly based, which were, in fact, referenced in its decision". (Dkt. No. 15, p. 22).

Based upon the record, the Court finds that the Appeals Council's decision is supported by substantial evidence.[16] Before determining whether or not the Appeals Council properly applied the treating physician rule to the additional evidence, the Court must determine whether or not the evidence is new, material and related to the period on or before the date of the ALJ's decision. Thus, it is not necessary for the Court to engage in an analysis of the substance of the additional evidence or the applicability of the treating physician rule unless or until the Court determines that the Appeals Council was required to consider the additional evidence.

Plaintiff did not begin treating with FNP Vecchio and Dr. Cecil until December 6, 2005. Thus, the additional evidence is clearly new and not cumulative.  However, upon review of the evidence, the Court finds that the evidence fails the materiality test.  The medical records from Mohawk Valley Orthopedics document plaintiff's treatment for pain in his lumbar spine, cervical radiculopathy and bursitis of the Achilles heel.  FNP Vecchio and Dr. Cecil diagnosed plaintiff

---

[16] While the Court agrees with the Magistrate Judge's conclusion that remand was not required based upon the additional evidence, the Court does not adopt the reasoning set forth in the Report and Recommendation.

with cervical radiculopathy, carpal tunnel syndrome, chronic pain syndrome and spinal stenosis. None of these impairments were before the ALJ during the hearing on September 9, 2005. Moreover, the additional evidence makes almost no reference to plaintiff's left hip pain and neither FNP Vecchio nor Dr. Cecil offer any additional diagnosis with regard to plaintiff's osteoarthritis.  Although FNP Vecchio mentioned plaintiff's complaints of hip pain, FNP Vecchio did not opine that plaintiff's left hip pain made him unable to work.  The opinions and diagnoses offered by both FNP Vecchio and Dr. Cecil do not contradict any of the ALJ's findings.  *See Eltayyeb v. Barnhart*, 2003 WL 22888801, at *10 (S.D.N.Y. 2003).  The new evidence did not involve the severity of plaintiff's left hip impairment further, it pertained exclusively to new disabilities plaintiff allegedly began to suffer after the administrative hearing.  Therefore, based upon the record, the Court finds that the new evidence does not relate to the period on or before the date of the ALJ's decision and does not reveal that plaintiff's left hip impairment was substantially more severe than previously diagnosed.  *See Florek*, 2009 WL 3486643, at *12.  The new evidence is clearly not probative and, even if received prior to the decision of the ALJ, would not have influenced the decision.

In light of the fact that the records were not material, the Appeals Council was not obligated to provide a written explanation of what weight it accorded to the new evidence.  *See Fernandez v. Apfel*, 1999 WL 1129056, at *3 (E.D.N.Y. 1999) (holding that remand is not required where the Council failed to give a detailed description of cumulative evidence submitted or to explain its impact on the plaintiff's case); *see also Herod v. Astrue*, 2008 WL 3155161, at *8 (W.D.N.Y. 2008) (holding that the Appeals Council satisfied its obligation by examining the new evidence and finding that it did not provide an adequate basis for changing the ALJ's decision).

23

Accordingly, the Court finds that the Appeals Council did not err when it declined to remand based upon FNP Vecchio's and Dr. Cecil's reports and records.

## V.      CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the Report and Recommendation is **REJECTED**; and it is further

**ORDERED** that the Commissioner's determination is **REVERSED**; and it is further

**ORDERED** that this action is **REMANDED** to the Commissioner for further proceedings consistent with this opinion; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date:  March 22, 2010

Norman A. Mordue
Chief United States District Court Judge

24